176 So.2d 735 (1965)
TEXAS EASTERN TRANSMISSION CORPORATION, Plaintiff-Appellee,
v.
BOWIE LUMBER COMPANY, Ltd., Defendant-Appellant.
No. 6396.
Court of Appeal of Louisiana, First Circuit.
May 24, 1965.
Rehearing Denied July 1, 1965.
*736 Walter J. Suthon, III, John L. Glover, Malcolm L. Monroe, of Monroe & Lemann, New Orleans, John F. Pugh, of Pugh, Lanier & Pugh, Thibodaux, for appellant.
Ray A. Barlow, of Hargrove, Guyton, Van Hook & Ramey, Shreveport, Martin, Himel, Morel & Daly, New Orleans, Peltier & Peltier, Thibodaux, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
This is an action to expropriate property for the purpose of constructing a natural gas transmission pipe line.
The plaintiff, Texas Eastern Transmission Corporation, sues Bowie Lumber Company, Ltd., in this expropriation proceeding to acquire a right of way or servitude across a tract of land owned by defendant in Lafourche Parish for the construction, operation and maintenance of a 36-inch gas pipe line. Prior to entering this action, plaintiff offered the defendant the sum of $4,860 for the rights herein sought. Defendant refused this amount. The trial court rendered judgment in favor of plaintiff awarding it the *737 right of way sought and condemned it to pay the defendant the sum of $7,304.10. Defendant appeals. The plaintiff neither appealed nor answered the appeal.
Plaintiff is a corporation existing primarily for the purpose of conveying and marketing natural gas to gas distributing companies. It purchases and gathers natural gas in the gulf south area and distributes it to customers from Louisiana to the eastern seaboard. Being a natural gas company as that term is defined in the Natural Gas Act [15 U.S.C. § 717a(6)] its operation is under the direction and control of the Federal Power Commission [15 U.S. C. § 717(a) & (b)]. Discerning a greater demand from its customers and securing an additional source of supply of natural gas from the Gulf Oil Corporation at Venice, Louisiana, the plaintiff made application to the Federal Power Commission, as it was required to do under the provisions of 15 U.S.C. § 717f, for authority and permission to construct a 36-inch pipe line from Venice to New Roads, Louisiana, to tie in with its presently existing cross-country transmission line. On December 19, 1963, the Federal Power Commission issued to the plaintiff a certificate of public convenience and necessity, and under the authority of this certificate it commenced the construction of this facility to its present system.
The defendant is the owner of an extensive area of land embracing approximately 45,000 acres of which there lies north of the Southern Pacific Railroad across Bayou Lafourche from Raceland a tract containing 531 acres. This tract of land is located in Sections 57, 53, 29, 30 and 121, Township 15 South, Range 18 East, Ward 7, of Lafourche Parish. In the projection of the proposed pipe line from Venice to New Roads, it was in too close proximity to the inhabited area of Raceland, in the opinion of plaintiff's engineers. In order to avoid this area, the route was altered in this projection by moving it further to the north of Raceland but yet passing Raceland south of the Southern Pacific railroad until it reached a point opposite the above described land of defendant. At this point, the line was laid out to cross the railroad, enter the property of defendant, and traverse it from an easterly to a westerly direction, diagonally, for a distance of about 7,814 feet. The right of way sought is 60 feet wide for this entire distance. The area of the permanent right of way measured 10.75 acres of land.
The defendant earnestly urges a reversal of the judgment awarding the expropriation of its property to plaintiff on the ground that the plaintiff lacks the power of expropriation. In the alternative, the defendant contends that if the plaintiff is empowered to expropriate its property, then there should be an adjustment of the line across defendant's property, and too, there should be an increase in the determination of value of the servitude and in severance damages. We will discuss these contentions in the order stated.

Plaintiff's Lack of Power of Expropriation
Plaintiff in support of its right and authority to expropriate the property in question introduced into evidence the order of the Federal Power Commission. This order, dated December 19, 1963, contains the certificate of public convenience and necessity. Additionally, testimony was offered by plaintiff to explain the nature of its business, as well as the purpose for which the pipe line would be used. We have carefully examined the contention and position of the defendant in respect to its position that plaintiff lacks expropriation authority. We fail to find anything in this position that merits a detailed discussion. The defendant attacks this right of plaintiff in the vein that the order of the Federal Power Commission is of no effect because the Commission did not hold a formal hearing on plaintiff's application. Suffice it to say that this is a collateral attack on the order of a federal agency and even if it could be a subject of collateral attack, which we hold is not possible under the authority of Texas *738 Eastern Transmission Corporation v. Bowman (1959) 238 La. 399, 115 So.2d 797, any attack on an order of a federal agency must be brought in a federal court.
Filed in evidence is a certified copy of the order of the Commission. On its face it appears to be regular and in conformity to the regulatory requirements of the Natural Gas Act, supra.
Furthermore, an order of the Federal Power Commission carries with it a presumption of validity. In 73 C.J.S. Public Administrative Bodies and Procedure § 145, p. 478, the rule is stated as follows:
"As a general rule, the decisions or orders of an administrative body are, in the absence of evidence to the contrary, presumptively correct and valid. Thus there is a presumption that legal duties and statutory requirements were complied with, that facts justifying a ruling were in existence, and that there was sufficient evidence on which to base the decision of the agency. * * *"
We find and so hold that the plaintiff has amply demonstrated that it has the right and authority to institute these expropriation proceedings for the acquisition of the right of way herein sought.
There is inherent in government, both state and federal, the power of eminent domain. The government, through certain agencies so designated by the legislature or Congress, has the constitutional authority to delegate the power, through authority conferred by these agencies, to certain classes of entities that serve public necessity and convenience. An example of the governmental agency is the Federal Power Commission, and the class of entity is a gas transmission company.

Adjustment of the Line Across Defendant's Property
At the present time, the 531 acre tract of land described supra is devoted to pasturage and timber growing. The highest and best of the land is located on the front or next to the Southern Pacific railroad, this being the south side of the property. From the maps introduced into evidence it appears that this 531 acre tract of land has a frontage along the railroad of approximately 8,500 feet. There now exists a Louisiana Power and Light Company power transmission right of way which traverses this tract for its entire width at a depth from the railroad on the east side of 1500 feet to about 900 feet on the west side.
According to the testimony of witnesses who have been on the land, the ground lying between the power line right of way and the railroad is the highest and best land, the front land.
The right of way sought by the plaintiff begins at a point some 350 feet west of the point where the east line of Section 57, Township 15 South, Range 18 East crosses the north side of the railroad right of way, then proceeds in a northwesterly direction for about 120 feet, thence in a westerly direction the remaining width of the tract, or a distance of about 7800 feet. The pipe line leaves the property of defendant at a distance of about 1300 feet north of the north right of way line of the railroad. The result of this projection is that it runs diagonally from the southeast corner of the front land of the tract and makes its exit in the northwest corner of this highest and best land. The pipe line crosses the power line right of way a distance of about 5700 feet from the point of entry on the property.
The defendant proposed two substitute right of ways, but the one seriously proposed is described as one extending on a tangent and on the same bearing as that at which the pipe line crosses the railroad right of way onto the defendant's property to a point that this tangent crosses the power line right of way, thence running along the north side of the power line right of way, occupying a part of the Louisiana Power and Light Co. right of way and partly the land of the defendant to the *739 point this line intersects with the proposed line as laid out by plaintiff, or the point on the north side of the power line right of way where the plaintiff's proposed route crosses the power line right of way, thence continuing on the plaintiff's proposed route to its exit from the defendant's property.
The chief merit of the route proposed by the defendant is that it prevents or saves its property from a severance by the pipe line, however it does add approximately 500 feet to the length of line in crossing defendant's property.
The plaintiff's staff engineer, Mr. Hitchcock, testified as to the manner in which the route was proposed and finally determined to be the one to be followed. The first step in selecting the route is to take coast and geodetic maps from which the route is tentatively laid out. The tentative route is marked on these maps, and from this aerial strip photographs with width or lateral view of five miles are taken. Using these aerial strip photographs, the route is again laid out. Then engineers are sent into the field to check on any questionable points, such as multiple creek crossings, nearness to communities and other conditions like that. From that available information, survey parties are sent to actually survey the line. The staff engineer then selects the route and determines that the route so selected is the most feasible and best possible route to follow.
It appears from the testimony that at the time the defendant was first contacted by a representative of the plaintiff the route that was objectionable to defendant had already been proposed and approved as the one to be used for the pipe line. It also appears that defendant made at least five separate appeals to the plaintiff, through various representatives, to consider another route to save the severance of defendant's property as described supra. The plaintiff refused to make any reconsideration. It also appears to be a policy of the plaintiff not to consider any alteration of the selected route unless it redounds to a benefit of the plaintiff.
Plaintiff's staff engineer, Mr. Hitchcock, testified that his objection to the alternate route proposed by defendant was that the ground was considerably wetter back there and that it would lengthen the line by over 500 feet. Defendant's engineer, Mr. Gilbert, who selected the alternate route stated that his reasons for the selection were that it would minimize the severing of the front portion of the property, that the paralleling of the existing right of way of the power line was desirable, and that it would place the line in a position not to interfere with or be a detriment to any industrial development, a possible residential subdivision or some other similar use of the property. However, it is important to note that in Mr. Gilbert's testimony he did not criticize the route selected by plaintiff from either an engineering or economical standpoint.
It is the rule in this State, and which prevails in all other jurisdictions that we had examined, that in expropriation of property, including servitude, rights of passage, and right of ways of the type here under consideration, the selection of a route by the expropriating authority or agency will not be disturbed or upset except upon showing by the party resisting the expropriation that the selection was made through fraud, bad faith or conduct or practices amounting to an abuse of the privilege.
There is the presumption present that the selection made by the expropriating authority is the best and most feasible. While it is true, as was stated by this court in Central Louisiana Electric Company v. Covington and St. Tammany Land and Improvement Company, (1961) 131 So.2d 369, on page 376 that:
"It is elementary that in all expropriation cases the prohibition against arbitrary, unreasonable, capricious and unnecessary taking is ever present." *740 still the burden is with the defendant to show that the plaintiff herein is guilty of fraudulent practices, bad faith or conduct or practices amounting to an abuse of the privilege of expropriation.
Defendant argues that "[E]ssentially, the arbitrariness, bad faith, unreasonableness and abuse of discretion in this case consisted of Texas Eastern's refusal to consider the relatively slight adjustment requested by Bowie where Texas Eastern had already made a decision for alteration of its route which worked so seriously to the detriment of Bowie. * * * Thus, Texas Eastern clearly had a duty at least to consider an adjustment of the route, particularly in view of the substantial alteration already made by Texas Eastern to the severe detriment of Bowie."
At this point the proposed route had been finalized into definite selection, and while not necessarily approving its avoidance of further discussion of the route, we find no legal reason or basis for holding that plaintiff is guilty of such conduct as would vitiate its selection of the route and impose upon it an alternate route.
The ruling of this court in the case of Central Louisiana Electric Company v. Covington and St. Tammany Land Improvement Company, supra, is apropos to the issues raised by the defendant herein as to the adjustment of the line across its property. Also see: United Gas Pipe Line Co. v. New Orleans Terminal Company, (1963) 156 So.2d 297; Iberia Parish v. Cook, 238 La. 697, 116 So.2d 491; Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901.
The prevailing rule is stated in 29A C.J.S. Eminent Domain § 91, page 376, as follows:
"* * * a delegation of the power of eminent domain gives the grantee of the power the right to determine the location and route of the improvement and of the land to be taken for it, and such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respects beyond the privilege conferred by the * * * statute. Evidence that another route is feasible is not sufficient to show that the grantee's selection constitutes bad faith, oppression, or abuse of power. * * *."
We conclude that the route selected by the plaintiff should not be altered.

Value of the Servitude and Amount of Severance Damages

The plaintiff has neither appealed nor answered this appeal, therefore we are not concerned herein with whether the award of the trial court is excessive.
The defendant is seeking an increase in the amount of the award to $60,377, or alternatively to the sum of $35,485.60. If we are to increase the award as sought for by the defendant we will be constrained to do so through a consideration of the severance damages inflicted on the adjoining property to the pipe line right of way. This is necessarily so because the two experts on values offered by the defendant fixed the total value of the condemned property at amounts less than the total award of the trial court. Mr. Kuebel fixed the value of the property taken at $5,421.50, and the defendant's other witness, Mr. Bennett, fixed the amount at $6,717.
The trial court did not favor us with written reasons or any explanation of how the award of $7304.10 in favor of defendant was calculated.
The plaintiff offered the testimony of two experts, Mr. Derbes and Mr. Tiger. There is no need for us to consider the testimony of either of these gentlemen as the total value of the land as fixed by Mr. Derbes was $2,227.25, and by Mr. Tiger was $1,948.30. Neither of them found any severance damages to the remainder. Therefore, their testimony is of no value in considering *741 whether an increase is warranted under the facts.
The only proof offered of any severance damages is pitched on the hypothesis that the highest and best use of the property is for industrial development.
Mr. Kuebel, to justify his opinion that the highest and best use of the property is the present potential for industrial use, pointed out that the property possessed the following qualities:
1. Wide frontage on railroad, and access to water transportation;
2. Close proximity to numerous producing gas and oil wells;
3. The history of the property as a large sawmill community;
4. The number of large tracts in south Louisiana formerly used as pasturage, but with railroad and water access, that had been converted to industrial use.
Defendant further points out that Mr. Kuebel testified that he had checked throughout Lafourche Parish for similar sites but found only two others of comparable size and with similar features, however he found no recent sales of those tracts.
The other expert appraiser offered by defendant was Mr. Bennett who testified that this property possessed considerable potential for the future location of large woodusing plants and that these plants favor former mill sites. He testified that this land was available to timber, transportation to plant and to market for the finished product, and labor supply, as well as gas, power and other utilities.
Both of these witnesses testified that the pipe line traversing defendant's property materially reduced its value as a potential industrial site.
Neither of these witnesses who as experts in the real estate field are presumed to be in close touch with area development testified that any concern or industrial developer was actually considering this area or this property for immediate future development. The mere fact that this property possesses attributes found desirable or actually required for industrial use does not ipso facto render this property in its highest and best use industrially.
We find the defendant's offer of proof of severance damages to be entirely inadequate, and the basis for industrial use to be too speculative and remote to justify an award. Defendant has failed to show that such a potential use is reasonably prospective, or that it can be anticipated within the reasonably near future. See: State of Louisiana through Department of Highways v. Rapier, La.App., 152 So.2d 272.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Defendant to pay all costs of this appeal.
Affirmed.