351 So.2d 517 (1977)
LOUISIANA RESOURCES COMPANY, Plaintiff-Appellee,
v.
Matilda Gray STREAM, Defendant-Appellant.
No. 6150.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
Rehearing Denied November 10, 1977.
Camp, Carmouche, Palmer, Carwile & Barsh by A. J. Gray, III, Lake Charles, for defendant-appellant.
Hargrove, Guyton, Ramey & Barlow by Ray A. Barlow, Shreveport, and Michael R. Mangham, and Jones, Jones and Alexander by Jerry G. Jones, Cameron, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and FORET, JJ.
DOMENGEAUX, Judge.
Plaintiff, Louisiana Resources Company, is engaged in the business of piping and marketing natural gas for the purpose of supplying the public with that resource. Pursuant to its right of expropriation granted by LSA-R.S. 19:2, it filed this expropriation suit in November, 1976, to take a right-of-way or servitude across a tract of land owned by defendant, Matilda Gray Stream. The purpose of the taking is the construction of an eight-inch natural gas pipeline.
Defendant filed an exception of no cause of action. The case as to all issues except compensation was submitted to the district judge on a written stipulation of the parties.[1] The only issues before the district judge were: (1) the public purpose and necessity of the taking and (2) whether the route should be altered so as not to cross defendant's property.
*518 The district judge overruled the exception of no cause of action, finding that the taking was for a public purpose and was necessary, and that the route across plaintiff's property need not be altered. Defendant has taken this appeal. We affirm.
The pipeline in question is a lateral one which will be attached to a main pipeline that is approximately 100 miles long, running from the western edge of Cameron Parish to the northeast corner of Vermilion Parish. It parallels the coastline in Cameron Parish three to five miles inland to an area known as Crab Lake, and at Crab Lake it turns northeasterly and goes to Cow Island. There it connects with other pipelines. The gas thus transported is delivered and disposed of intrastate.
On appeal the parties have stipulated to the public purpose and necessity of the taking. The sole issue submitted to us therefore, is the right of the expropriator to choose this route across defendant's property when another route could be taken which avoids her property altogether.
The trial judge in his written reasons for judgment quite ably disposed of this issue. We quote him in part:
". . . . .
The defendant next contends that the plaintiff does not have the `right to take' her land for a pipeline which could be constructed completely on the neighboring land, and which is owned by the operator of the well which is the source of the supply [Mecom]. The defendant contends that this line should be located over lands belonging to those who have a direct interest in the company that supplies the gas. It [sic] further contends that the increased costs of construction of the proposed line is not relevant. The defendant urges that costs will be ultimately paid by the profits received by Mecom and the plaintiff, whereas injury to the defendant would be permanently borne by the defendant with no benefits received therefrom. In substance the defendant contends that equity dictates that the line be located as it proposes on Exhibit A, attached to the stipulation.[2]
An examination of Exhibit A reveals that the line as proposed by the plaintiff leaves the Mecom well and circumvents the open water created by Mud Lake and then turns due south to attach to the main line. The proposed route of the defendants reflects that it crosses Mud Lake, which is crescent in shape, in two places and proceeds in a general southwesterly direction intersecting the main line southwest of the Mecom well. The defendant's proposal is 23,760 feet, while the plaintiff's proposal is 14,256 feet of line. The difference between the two proposals is 9,504 feet.
It was stipulated in Paragraph 15 of the stipulation that Mr. Wendell Gates, an engineer qualified as an expert in the field of construction, maintenance and operation of pipelines, would testify that in his opinion:
`(a) the route which he has selected for the proposed pipeline is the best route from an engineering and economic standpoint; and
(b) the route across lands of the owner of the gas to be transported, as shown on attached Exhibit `A' is not the best route from an engineering and economic standpoint; and
(c) his reasons for not selecting the route across lands of the owner of the gas to be transported, as shown on attached Exhibit `A', are that such route is longer and more expensive that the route he has selected and reduces the volume of gas which can be transported through the pipeline, because the longer the pipeline, the greater the gas pressure drop; and that, although the gas pressure drop may not present a problem from the standpoint of the present well, it could present a problem if, in the future, more gas from other wells in the vicinity was put through the pipeline.'
It is well established in the jurisprudence of this state that a delegation of *519 the power of eminent domain gives the grantee of the power the right to determine the location and route of the improvement and of the land to be taken for it. Such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respects beyond the privilege conferred by the statute. Evidence that another route is feasible is not sufficient to show that the grantee's selection constitutes bad faith, oppression, or abuse of power. Considering the location of this line, and the testimony of Mr. Gates, along with the jurisprudence, this court concludes that the route selected by the plaintiff should not be altered."
The proposition that the location of property to be expropriated is within the sound discretion of the expropriator who acts reasonably and in good faith cannot be questioned. See Greater Baton Rouge Port Commission v. Watson, 224 La. 136, 68 So.2d 901 (1953); City of Westwego v. Marrero Land & Imp. Association, 221 La. 564, 59 So.2d 885 (1952); Central Louisiana Electric Company v. Covington & St. Tammany Land and Improvement Company, 131 So.2d 369 (La.App. 1st Cir. 1961); United Gas Pipe Line Company v. New Orleans Terminal Company, 156 So.2d 297 (La.App. 4th Cir. 1963); and Texas Eastern Transmission Corporation v. Bowie Lumber Company, 176 So.2d 735 (La.App. 1st Cir. 1965).
There is no evidence herein to suggest that plaintiff has acted arbitrarily or capriciously in making its selection. Defendant is not entitled, in the absence of such proof, to have the route altered simply because she has indicated an alternative route which is physically feasible.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against defendant-appellant.
AFFIRMED.
Appendix to follow.
*520 
*521 WATSON, J., concurs and assigns reasons.
WATSON, Judge, concurring:
Article 1, § 4, of the Louisiana Constitution of 1974 provides that expropriation by a private entity must be for a "public and necessary purpose". Whether a taking is for a public and necessary purpose is a judicial question. This provision was adopted after great controversy and was intended to make expropriation by private entities more difficult. See the discussions at 35 La.L.R. 10 and 21 Loyola L.R. 19.
It appears that defendant concedes the purpose is public, but it is not clear whether there is a concession that the taking is "necessary" as contemplated by the Constitution of 1974. Of course, if public purpose and necessity are both conceded, the defendant is out of court.
I think it is important to note the changes implied by the new constitutional provision.
The jurisprudence cited by the majority was decided prior to the enactment of the 1974 Constitution. The redactors of the 1974 Constitution have provided a new standard of proof ". . . considerably more onerous . . ."[1] for such a taking. There is no longer a presumption of necessity. Plaintiff, Louisiana Resources Company, now must show the necessity of this taking. The fact that the pipeline route chosen is "the best route from an engineering and economic standpoint" (according to stipulated testimony by plaintiff's engineer) does not necessarily prove necessity when the fact is considered that readily available is another route across lands owned by the owner of the gas to be transported. I have doubts that the mere showing that the owner route would be more expensive is a sufficient basis on which to make a judicial determination of necessity.
I respectfully concur.

ON APPLICATION FOR REHEARING
PER CURIAM.
Defendant in applying for rehearing contends that she did not stipulate to the "necessity of the taking". She contends that the issue was whether it was "necessary" for appellee to expropriate the land in which she has an interest, when the proposed pipeline could be constructed upon property of those receiving the benefit of the pipeline (Mecom).
Assuming arguendo that defendant did not stipulate to the "necessity of the taking" the evidence amply demonstrates such necessity. She admits that she stipulated to "public purpose and compensation." There is a "necessary" purpose for this expropriation. It is obvious that a pipeline must be built or an existing line must be used. The record reflects and the evidence is unchallenged that there are no existing facilities to transport the gas from the Mecom well to plaintiff's main transmission line and thereby into the intrastate market.
Having decided that this expropriation by a private entity is for a public and necessary purpose (Article 1, Section 4, Louisiana Constitution of 1974) we reiterate, as shown in our original opinion, that the trial judge was correct in ordering the expropriation across the defendant lands.
APPLICATION FOR REHEARING DENIED.
WATSON, J., adheres to the views expressed in his original concurrence.
NOTES
[1] The question of compensation was fixed for subsequent trial by jury, but has since been decided by stipulated judgment dated January 24, 1977.
[2] Footnote by Appellate Court: Exhibit A is reproduced in the Appendix.
[1] 21 Loyola L.R. 22.