628 So.2d 75 (1993)
CALCASIEU-CAMERON HOSPITAL SERVICE DISTRICT, Plaintiff-Appellant,
v.
James M. FONTENOT and Barbara Fontenot, Defendants-Appellees.
No. 93-148.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Opinion Denying Rehearing December 16, 1993.
*76 John B. Scofield, John Richard Pohorelsky, Patrick Donavon Gallaugher, Jr., Pamela Viney Mathews, Lake Charles, for Calcasieu-Cameron Hosp. Service Dist.
Henry Eugene Yoes III, Blaine Andrew Doucet, Lake Charles, Richard Dale Moreno, Baton Rouge, for James M. and Barbara Fontenot.
Before STOKER, DOUCET and SAUNDERS, Judges.
STOKER, Judge.
This is an expropriation suit. The Calcasieu-Cameron Hospital Service District appeals a judgment dismissing its suit to expropriate *77 an unimproved tract of land which is owned by the Fontenots and is contiguous to the Calcasieu-Cameron Hospital. The main issue in this appeal is whether the Hospital District was arbitrary and capricious in deciding to expropriate the Fontenots' land for additional hospital parking. We reverse and remand.

FACTS
The Calcasieu-Cameron Hospital Service District (Hospital District) operates the West Calcasieu-Cameron Hospital (hospital) in Sulphur, Louisiana. In 1989, the State, Department of Transportation and Development began expropriation proceedings on part of the hospital's front parking lot in order to widen Cypress Street, which runs in front of the hospital. This resulted in the loss of fifty-two of the hospital's eighty-two parking places in its front parking lot, which is adjacent to the hospital's main entrance and admissions office. Even before the State, DOTD's taking of part of the hospital's front parking lot, the front parking lot was inadequate, forcing people to park in the rear of the hospital and walk up to the front.
Therefore, in mid-1990, the Hospital District began negotiating the purchase of the Fontenot's vacant lot, which is situated adjacent to the main entrance of the hospital on the west side. The hospital's main entrance is actually set at an angle in the northwest corner of the hospital. The Fontenots' land has an office building in the front (north) half, of which one-half is occupied by their dental offices and one-half is leased by the hospital. The south half of the lot is unimproved, and it is this land which the Hospital District is attempting to expropriate. The Fontenot's unimproved land is described as follows:
Beginning 500 ft. West of the Northeast (NE) Corner of the Southeast Quarter of the Southeast Quarter (SE ¼ of SE ¼) of Section Thirty-four (34), Township Nine (9) South, Range Ten (10) West, Calcasieu Parish, Louisiana, thence South 185.40 ft. to POINT OF COMMENCEMENT, thence continuing South 250.60 ft., thence West 100 ft., thence North 250.66 ft., thence East 100 ft. to POINT OF COMMENCEMENT.
The hospital owns the property to the south and to the east of the Fontenot's lot.
Negotiations with the Fontenots to acquire the property were carried on for over a year. Possibilities included a trade of property, the purchase of only the unimproved back half of the lot, or the purchase of both the unimproved back half and the front half with the office building. However, the parties were unable to agree on a price.
After failing to conventionally acquire the Fontenot's land, the Hospital District's Board of Commissioners decided to expropriate the unimproved back half of the lot in a closed executive session on January 22, 1992. This decision was ratified in an open meeting held immediately after the executive session, by a motion "to approve all actions taken in the executive session."
The Hospital District filed this suit to expropriate the land on May 27, 1992. In its reasons for the expropriation, set forth in its petition, the Hospital District stated both the need to replace the front parking taken by the State and its plans for future expansion of the hospital. The Fontenots answered with a denial, claiming the expropriation was not necessary because the Hospital District already owned unimproved land on the east and south sides of the hospital. In the alternative, the Fontenots claimed compensation due, including the fair market value of the lot taken and severance damages to the remainder.
A trial on the merits was held on September 1, 1992. At the close of the Hospital District's case, the trial judge granted the Fontenots' motion for an involuntary dismissal of the Hospital District's suit, finding the expropriation of the Fontenot's land was not necessary at that time. The trial judge also awarded $12,000 attorney fees to the Fontenots.
The Hospital District then filed this appeal, contending the trial judge erred in finding the expropriation was not necessary at this time, in substituting his own judgment for that of the Hospital District in choosing the location of the land needed, in finding the *78 Hospital District had been arbitrary and capricious, in failing to dismiss the Hospital District's suit "without prejudice", and in awarding attorney fees of $12,000 to the Fontenots. The Fontenots answered the appeal, seeking additional attorney fees for frivolous appeal.

OPINION

APPLICABLE LAW
A hospital service district is a political subdivision of the state. LSA-R.S. 46:1051; Bertrand v. Sandoz, 260 La. 239, 255 So.2d 754 (1971). One of the primary purposes of a hospital service district is to own and operate hospitals for the care of persons suffering from illnesses or disabilities. Also, a hospital district is empowered to administer other activities relating to "rendering care to the sick and injured or in the promotion of health which may be justified by the facilities, personnel, funds and other requirements available."
LSA-R.S. 46:1060 provides for the creation of hospital service districts with all of the powers of a corporation, including the right and power of expropriating property for the purpose of acquiring land for any purpose that it may find necessary in the operation of a hospital service district. See also, Bertrand v. Sandoz, supra. An expropriation by a hospital service district, as a political subdivision of the state, is regulated by LSA-R.S. 19:1-15.
It is well settled that all property is held subject to the right of expropriation, when the public interest and necessity requires that it be surrendered by the owner. An expropriation beyond the public interest and necessity would obviously be unconstitutional. City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675 (1930); 1974 La. Const. art. 1, § 4.
The expediency or necessity of an expropriation is a matter for judicial determination. Greater Baton Rouge Port Comm'n. v. Watson, 224 La. 136, 68 So.2d 901 (1953); City of Westwego v. Marrero Land & Imp. Ass'n., Ltd., 221 La. 564, 59 So.2d 885 (1952); Southern Nat. Gas Co. v. Poland, 384 So.2d 528 (La.App. 2d Cir.), writ ref.'d, 386 So.2d 363 (La.1980); Southwest La. Elec. Mem. Corp. v. Simon, 207 So.2d 546 (La.App. 3d Cir.1967), writ ref.'d, 252 La. 104, 209 So.2d 37 (La.1968). In this context, the word "necessary" refers to the necessity of the purpose for the expropriation, not the necessity for a specific location. Claiborne Elec. Coop., Inc. v. Garrett, 357 So.2d 1251 (La.App. 2d Cir.), writ ref.'d, 359 So.2d 1306 (1978). The amount of land and the nature of the acreage taken must be reasonably necessary for the accomplishment of the proposed project. Evangeline Parish Police Jury v. Deville, 247 So.2d 258 (La.App. 3d Cir.1971), and cases cited therein. It is not necessary, however, to show actual, immediate, and impending necessity for the expropriation. It is sufficient, in carrying out the general plan of improvements contemplated in the near future, to show that the defendant's land will be needed for the purposes set out in the petition. Parish of Iberia v. Cook, 238 La. 697, 116 So.2d 491 at 494 (1959), quoting City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675 (1930). The trial court's factual determinations as to the necessity or expediency of the expropriation will not be reversed on appeal in the absence of manifest or clear error. City of Lafayette v. Delhomme Funeral Home, Inc., 413 So.2d 348 (La.App. 3d Cir.1982).
However, the extent and location of the property to be expropriated are within the sound discretion of the body possessing the power of eminent domain, and these determinations will not be interfered with by the courts if made in good faith. Greater Baton Rouge Port Comm'n. v. Watson, supra; Board of Comm'rs. of Tensas Basin Levee Dist. v. Franklin, 219 La. 859, 54 So.2d 125 (1951); Evangeline Parish Police Jury v. Deville, supra. Questions such as the location of the expropriation, the extent of the property taken, the nature of the title to be taken, and the wisdom of pursuing the particular improvement project relate to the necessity of the taking. The standard is whether the expropriator, in selecting the location and extent of the property to be expropriated, acted in bad faith or so capriciously or arbitrarily that its action was without an adequate determining principle or was *79 unreasoned. Criteria to be considered by the expropriator include the availability of an alternate route, costs, environmental factors, long-range area planning, and safety considerations. The expropriating agency may abuse its discretion by acting without considering and weighing the relevant factors, that is, by acting arbitrarily. Red River Waterway Comm'n. v. Fredericks, 566 So.2d 79 (La.1990), and authorities cited therein. However, the mere availability of a feasible alternative location is not, by itself, an indication that the expropriator has acted arbitrarily or capriciously in making its selection. Faustina Pipe Line Co. v. Levert-St. John, Inc., 463 So.2d 964 at 969 (La.App. 3d Cir.), writ denied, 466 So.2d 1301 (La.1985), quoting Louisiana Resources Co. v. Stream, 351 So.2d 517 (La.App. 3d Cir.1977).
Thus, the expropriating authority must show the public and necessary purpose for the expropriation and that, prior to filing the petition for expropriation, it offered to compensate the owner with an amount equal to at least the lowest appraisal or evaluation. LSA-R.S. 19:2.1, 2.2.
The burden is on the defendant owner to establish that the decision of the public body to expropriate the property is unreasonable and in bad faith. Red River Waterway Comm'n v. Fredericks, supra; Acadia Parish Police Jury v. Delahoussaye, 490 So.2d 789 (La.App. 3d Cir.1986).

ARGUMENTS
The Hospital District argues that it needs the Fontenots' land to replace lost parking spaces and to accommodate the future expansion of the hospital.
The purposes of the proposed project, to replace and expand the public parking facilities at the hospital and to increase the size of the hospital's power plant for the future addition to the hospital, are clearly public purposes. The public nature of the purpose of the project is not really at issue. Also, the good faith of the Hospital District in its negotiations to conventionally acquire the land from the Fontenots was stipulated to by the Fontenots at trial. Therefore, the only serious issue on appeal is whether this expropriation is necessary.[1]
The trial judge found that the Hospital District failed to carry its burden of showing that the expropriation of the Fontenots' land is necessary. We disagree.
In his oral reasons for judgment, the trial judge stated that "a review of the testimony of witnesses and the evidence ... reveals that a taking of the Fontenots' property is not necessary, at least at this time." He found the evidence showed the primary source of parking is in the rear of the hospital and that there is sufficient (unimproved) acreage owned by the hospital to expand its existing parking area. The trial judge also noted that, although there was testimony about future expansion of the hospital, the plans were so tentative and subject to change that it would be premature to consider them in this expropriation suit.
At trial, the Hospital District introduced the testimony of Wayne Swiniarski, the CEO and administrator of the hospital and the secretary of the board of directors, and the testimony of E.J. Ellender, the architect hired by the Hospital District to develop the architectural plans for the expansion of the hospital.
Swiniarski testified that the hospital needed the Fontenots' land for parking spaces to replace those spaces expropriated by the State, to provide additional parking to accommodate the future expansion of the hospital, and to provide space for the planned expansion of the hospital's power plant. He stated that the Fontenots' lot, which is on the west side of the hospital, is better for hospital parking than the land already owned by the hospital on the east side and to the rear of the hospital because it is closer to the hospital's main entrance. He also testified that *80 the hospital had not yet developed a formal plan for expansion, but that it had hired an architect to develop one and had started arranging the financing of the expansion. Swiniarski admitted that a change in the location of the hospital's main entrance had been considered.
Ellender testified that the Fontenots' land is necessary for the expansion of the power plant because more space is not otherwise available next to the existing power plant, the Fontenots' land is next to the existing power plant, and it is more economical to acquire the Fontenots' land than to relocate the power plant. He also testified that the Hospital District needs the land to replace the front parking spaces lost to the State. Ellender stated that the rear parking lot is too far from the hospital's main entrance.
We find the trial judge impermissibly substituted his own judgment for that of the Hospital District in determining that the expropriation was not necessary because there are alternative locations available for parking. The evidence adduced by the Hospital District sufficiently addressed the relevant criteria as to the necessity for taking the Fontenots' property, i.e. the location, the extent of the property taken, the availability of alternative locations, costs and long-range area planning. Compare, Parish of Iberia, v. Cook, supra.
Therefore, the Fontenots did not carry their burden of proving the Hospital District was in bad faith. The trial judge manifestly erred in finding that the Hospital District acted unreasonably and arbitrarily. The judgment of the trial court is reversed.
Since the trial judge granted the Fontenots' motion for an involuntary dismissal at the close of the Hospital District's evidence, the Fontenots did not have an opportunity to introduce any evidence as to the value of their property. The case is remanded for the taking of evidence as to the value of the Fontenots' land and to render a judgment thereon.
In light of our holding, discussion of the other assignments of error is unnecessary.

DISPOSITION
For the reasons given, the judgment of the trial court is reversed. The case is remanded for further proceedings in accordance with the views expressed herein. Costs of this appeal are assessed to defendants-appellees.
REVERSED and REMANDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
The successful party on appeal in this case, West Calcasieu-Cameron Hospital Service District, has applied for a rehearing. The Hospital District requests that we clarify our ruling on the original hearing to the extent of indicating whether we reversed the trial court's award of $12,000 in attorney fees in favor of the defendants as well as reversing the trial court's ruling on the merits of the case. The Hospital District suggests that clarification is necessary because the defendants maintain that this court did not reverse the award of attorney fees.
The Hospital District points out that the trial court's original judgment ordered that attorney fees be paid but ordered that the amount be set at a subsequent hearing. This was done with the result that the trial court rendered a separate judgment setting the fee at $12,000. The Hospital District appealed the judgment awarding attorney fees as well as the earlier judgment on the merits of the expropriation.
If clarification is needed, we hereby reverse the judgment of the trial court in this matter which ordered the payment of attorney fees and the judgment fixing the fee at $12,000, and those judgments are set aside and vacated.
The application for rehearing is denied.
NOTES
[1] The defendants have also raised the issue of whether the Hospital District violated the open meetings laws, LSA-R.S. 42:4.1-13, in making the decision to expropriate the Fontenot's property in a closed meeting. LSA-R.S. 46:1073(B) specifically authorizes a hospital service district commission to hold an executive, or closed, session for the discussion and development of strategic plans, which includes any plan, strategy or device developed or intended to construct, operate or maintain a health facility (LSA-R.S. 46:1072(4)). Therefore, this issue has no merit.