United States Court of Appeals,

Fifth Circuit.

No. 95-60171.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Counter Defendant-Appellee, Cross-Appellant,

v.

PLANTERS BANK & TRUST COMPANY, Defendant-Counter Claimant-Appellant, Cross-Appellee.

March 18, 1996.

Appeals from the United States District Court for the Northern District of Mississippi.

Before KING, STEWART and PARKER, Circuit Judges.

STEWART, Circuit Judge:

United States Fidelity and Guaranty Company, Inc., (USF & G) executed and delivered a Financial Institution Bond to Planters Bank & Trust Company. This dispute arises out of a claim by Planters on the Bond to recover for losses incurred as a result of a forgery/kiting scheme. USF & G denied the claim and immediately filed a declaratory judgment action against Planters. Planters answered and counterclaimed for the amount of its losses, $637,600.73, and for punitive damages based on USF & G's bad faith denial of the claim in the amount of $3,000,000.00. In a nonjury case, the district court granted partial summary judgment in USF & G's favor. For the reasons set forth below, we affirm.

*FACTS*

In the spring of 1992, William C. Maloney, Jr., stole trust account checks from the law firm of Townsend, McWilliams & Holladay in Indianola, Mississippi. The firm maintained its account in

1

Planters Bank. Maloney forged deposits and negotiated forged trust account checks, carrying out a check-kiting scheme between the trust account in Planters and accounts he maintained himself, through his corporations, or through his sons in two other banks: Bank of Ruleville and Sunburst Bank. Planters gave credit immediately to the trust account upon deposit. During the several day period that the check on either the Bank of Ruleville or the Sunburst Bank was being processed for collection, Maloney would write other checks on the trust account payable to himself or others and negotiate the same. He then would deposit most of the trust account checks in Bank of Ruleville or Sunburst Bank. By repeating this scheme, Maloney took advantage of the lag time required for transmittal, processing, and payment of checks from accounts in the different banks.

The loss Planters suffered included checks returned to Planters by Sunburst Bank, two checks refused by Bank of Ruleville, and $58,000 which Planters paid out in official checks to Maloney. Sunburst Bank returned three checks for $94,500, $89,500, and $74,000 as drawn on uncollected funds. Bank of Ruleville refused two checks drawn on the law firm's account. Planters found one of these checks, for $128,000, to be a forgery and delivered it as a timely return item. However, Bank of Ruleville refused to accept it. The second check was for $148,500; and Bank of Ruleville refused to accept it as well. The $58,500 in forged checks were negotiated personally by Maloney in the bank in exchange for Planters' official checks and cash.

Planters sued Bank of Ruleville to recover that portion of its loss but settled the claim for $189,250. In its lawsuit against USF & G, Planters contended that its claim for actual damages against USF & G had been reduced by that settlement figure. USF & G, however, took the position that the claim had been reduced by the amount of the loss initially attributed to Bank of Ruleville checks, $276,500.

USF & G filed a motion for summary judgment, or, in the alternative, partial summary judgment. The district court granted partial summary judgment for USF & G and, at the same time, disposed of the claim for punitive damages. It found that the $58,500 in trust account checks which were either cashed or used to buy cashier's checks in Planters did not fall within the exclusion. On cross appeal, USF & G argues that this portion of the claim is all part of the kite and that Planters did not sustain a loss until the kite crashed and the other banks started returning checks which had been deposited in the trust account.

DISCUSSION

*Summary Judgment*

The first point of contention is the appropriate standard of review of summary judgment given that this was a nonjury case. According to Federal Rule of Civil Procedure 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Typically, we review summary judgment evidence *de novo*. *Matter of Placid Oil Co.,* 932 F.2d 394, 396 (5th Cir.1991). However, there

3

is some hint of a distinction in the standard as between jury and nonjury trials.

In *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 273 n. 15 (5th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), a panel of this court remarked that "this circuit has arguably articulated an even more lenient standard for summary judgment in certain nonjury cases" as opposed to jury trials.[1] The

_____

[1]The full text of footnote 15 reads as follows:

It should be recognized that there was no request for a jury trial in this case. In this regard we note that this circuit has arguably articulated an even more lenient standard for summary judgment in certain nonjury cases. A panel of this court, in *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218 (5th Cir.1986), after noting that the Supreme Court has said that the standard for summary judgment mirrors the standard for directed verdict under Fed.R.Civ.P. 50(a) (citing *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) commented that, "in the same fashion, in nonjury cases it mirrors the standards for dismissals provided by Rule 41(b)." *Professional Managers,* 799 F.2d at 223.

Rule 41(b) of the Federal Rules of Civil Procedure provides, in relevant part, that:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

Fed.R.Civ.P. 41(b). "A dismissal under Rule 41(b) differs from a directed verdict in a jury trial in that the court need not determine that the defendant is entitled to judgment as a matter of law." *DuPont v. Southern Nat. Bank,* 771 F.2d 874, 879 (5th Cir.1985), cert. denied, 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986) (citation

4

omitted). "Instead, as the finder of fact, the court may resolve disputed issues of fact. A Rule 41(b) dismissal is warranted when the district court, even before hearing the defendant's evidence, determines that the plaintiff has failed persuasive evidence regarding the necessary elements of his case." *Id.* Under Rule 41(b), the district court is "entitled to weigh evidence, make credibility judgments, and draw inferences unfavorable to the plaintiffs." *North Mississippi Communications, Inc. v. Jones,* 792 F.2d 1330, 1333 (5th Cir.1986) (footnote omitted)*; see also Weissinger v. United States,* 423 F.2d 795, 798 (5th Cir.1970) (en banc).

> In a line of cases dealing with summary judgment in the nonjury context, panels of this court have discussed the inquiry to be performed when summary judgment is sought. In a case wherein the court found that the parties did not request a jury trial, the panel stated that while a certain question is considered one of "fact" under state law, "to be judged in light of all the circumstances surrounding a given transaction,' ... a federal district court may nevertheless grant summary judgment on such an issue, in a non-jury case, if the "*evidentiary* facts are not disputed ... [and] trial would not enhance [the court's] ability to draw inferences and conclusions,' *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir.1978) (emphasis added). *Houston North Hosp. Properties v. Telco Leasing, Inc.,* 680 F.2d 19, 22 (5th Cir.) (footnote and citations omitted), *reh'g. denied in part, granted in part,* 688 F.2d 408 (1982). The court has also stated that:

>> Summary judgment may be improper, even though the basic facts are undisputed, if the ultimate facts in question are to be inferred from them, and the parties disagree regarding the permissible inferences that can be drawn from the basic facts. *Winter v. Highlands,* 5 Cir.1978, 569 F.2d 297, 299. " "[T]he choice between permissible inferences is for the trier of facts.' " *Nunez v. Superior Oil Co.,* 5 Cir.1978, 572 F.2d 1119, 1124, quoting, *Walker v. U.S. Gypsum Co.,* 5 Cir.1959, 270 F.2d 857, 862, *cert. denied,* 1960, 363 U.S. 805, 80 S.Ct., 1240, 4 L.Ed.2d 1148. Where a jury is called for, the litigants are entitled to have the jury choose between conflicting inferences from basic facts. *Nunez,* supra, 572 F.2d at 1124. However, where the judge is the trier of fact, as was the case here, he may be in a position to draw inferences without resort to the expense of trial,

opinion cited *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 223 (5th Cir.1986), where we recognized that while the standard for summary judgment "mirrors the standard for directed verdict under Federal Rule of Civil Procedure 50(a), [in] the same fashion in nonjury cases it mirrors the standards for dismissals provided by Rule 41(b)."

According to Rule 41(b)

> After the plaintiff in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

*Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1124 (5th Cir.1978), held that "[i]f a decision is to be reached by the court, and there are no issues of witness credibility, the court

---

> unless there is an issue of witness credibility. See id. at 1124-25.

> *Alabama Farm Bur. Mut. Cas. Co. v. American Fid. Life Ins. Co.,* 606 F.2d 602, 609-10 (5th Cir.1979), *cert. denied,* 449 U.S. 820, 101 S.Ct. 77, 66 S.Ed.2d 22 (1980).

> Whether or not these cases set forth a "nonjury summary judgment standard" different from the summary judgment standard applied in jury cases and, if so, whether it has been universally and consistently applied in nonjury summary judgment cases are not questions we need decide here. Since we can affirm the judgment of the district court in this case on the basis of the general summary judgment standard set forth in a long line of cases in this circuit and in *Liberty Lobby,* we merely note the question of whether a different and arguably more lenient summary judgment standard should apply in nonjury cases.

6

may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved." *Nunez* established that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.

What these cases mean for the standard applicable here is uncertain. While *Phillips Oil* suggests a distinction, it nevertheless declined to mandate one. Footnote 15 is this circuit's most extensive discussion of the issue. In the present case, however, we need not answer the intriguing question posed by the court in *Phillips Oil* regarding whether our circuit law has recognized a "nonjury summary judgment standard" different from the general summary judgment standard applied in jury cases. Standard summary judgment analysis suffices to affirm the district court.

*Financial Institution Bond*

In its brief, Planters relates what it deems are the relevant provisions of the bond. The bond defines "forgery" as

>   the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

Insuring Agreement (D) provides

>   (D) Loss resulting directly from

>       (1) Forgery or alteration of, on or in any Negotiable Instrument (except an Evidence of Debt), Acceptance, Withdrawal Order, receipt for the withdrawal of Property,

7

Certificate of Deposit or Letter of Credit.

> (2) transferring, paying or delivering any funds or Property or establishing any credit or giving any value on the faith of any written instructions or advices directed to the Insured and authorizing or acknowledging the transfer, payment, delivery or receipt of funds or Property, which instructions or advisers purport to have been signed or endorsed by any customer of the Insured or by any banking institution but which instructions or advices either bear a signature which is a Forgery or have been altered without the knowledge and consent of such customer or banking institution, Telegraphic, cable or teletype instructions or advices, as aforesaid, exclusive of transmissions of electronic funds transfer systems, sent by a person other than the said customer or banking institution purporting to send such instructions or advices shall be deemed to bear a signature which is a Forgery.

The uncollected funds exclusions provision of the bond, exclusion (*o*), provides that the bond does not cover "loss resulting directly or indirectly from payments made or withdrawals from a depositor's account involving items of deposit which are not finally paid for any reason, including but not limited to Forgery or any other fraud, except when covered under Insuring Agreement (A) ..."

In its memorandum opinion granting partial summary judgment, the district court separated the loss into two categories. First it found that the Bank of Ruleville and Sunburst checks were part of Maloney's check-kiting scheme and appropriately fell under exclusion (*o*). Planters should have made sure that the Maloney's deposits were drawn on sufficient funds or were not forgeries rather than immediately crediting them.

Planters concedes that the checks at issue were forgeries but argues that the express language of exclusion (*o*) required the district court to make findings regarding whether Planters's loss resulted from "items of deposit which are not finally paid" or

8

whether Planters's loss resulted from "payments made or withdrawals from a depositor's account."  The memorandum opinion, Planters complains, did not discuss the affidavit of Paul Carrubba, Planters's expert, who maintained that the Sunburst checks were finally paid and that the checks refused by Bank of Ruleville were not payments made.

Planters contends that the Sunburst checks were "finally paid" by Sunburst pursuant to Miss.Code Ann. § 75-4-213 (1972) with no right of revocation.  The section reads in pertinent part

(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

(a) paid the item in cash;  or

(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearinghouse rule or agreement;  or

(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith;  or

(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearinghouse rule or agreement.

Therefore Planters says that the losses resulting from the Sunburst checks do not fall within the bond exclusion.

Planters also argues that the Bank of Ruleville checks were also covered by the forgery provisions of the bond and not excluded by exclusion (*o*) because there was no payment made on them pursuant to Miss.Code.Ann. § 75-4-301 (1972).  According to Planters, this code section protected them since Planters made a timely return of the checks within the "midnight of the banking day of receipt" deadline.

USF & G argues that, on the contrary, exclusion (*o*) did cover the Sunburst Bank and Bank of Ruleville forgeries. It says that the bond in question is a standard form bond commonly used in the industry since 1941. The overwhelming case law applying exclusion (*o*) to deny coverage obviated the district court from making a specific finding on the affidavit of Paul Carrubba. Furthermore, USF & G, claims Carrubba's affidavit is speculative and conclusionary, with no basis in the facts of the scheme perpetrated in this case.

As the plaintiff, USF & G bears the burden of proving that exclusion (*o*) is applicable: "[W]here an exclusion is specifically pleaded as an affirmative defense the burden of proving such affirmative defense is upon the insurer ..." *Lunday v. Lititz Mut. Ins. Co.,* 276 So.2d 696, 698 (Miss.1973); *see Sentry Ins. v. R.J. Weber Co.,* 2 F.3d 554 (5th Cir.1993). In turn, USF & G simply relies on the clear language of the exclusion.

Indeed, the clear language of the bond supports the district court's decision to grant summary judgment with respect to the Bank of Ruleville checks. These checks were part of a check-kiting scheme and therefore the accompanying losses were excluded by exclusion (*o*). Exclusion (*o*) is meant generally, though not exclusively, to prohibit coverage for losses due to a check-kiting scheme. Maloney fraudulently negotiated the Sunburst Bank checks and Bank of Ruleville checks without sufficient funds to support them. This is the very definition of a check-kite and, therefore, exclusion (*o*) should have applied.

*Forged Checks*

The second category of loss, separate from the check-kiting scheme, consisted of the forged checks Maloney cashed or converted to cashier's checks personally at the Planters Bank. The district court decided that another provision of the bond covered them:

ON PREMISES

(B)(1) Loss of Property resulting directly from

(a) robbery, burglary, misplacement, mysterious unexplainable disappearance and damage thereto or destruction thereof, or

(b) theft, false pretense, common-law or statutory larceny, committed by a person present in an office or on the premises of the Insured.

while the Property is lodged or deposited within offices or premises located anywhere.

We agree with the district court's determination that the $58,500 loss was covered by the "ON PREMISES" clause and not excluded by (*o*). The court rightly found that "[e]xclusion (*o*) is dependent upon an account being improperly credited with deposits that have not been collected from the payor bank." Here, however, the trust account had sufficient funds on deposit when Maloney cashed the forged checks. Therefore, exclusion (*o*) did not apply. Furthermore, the checks were forgeries negotiated on the premises of Planters, falling within the plain language of the bond. Therefore, summary judgment was correctly entered.

AFFIRMED.