673 So.2d 291 (1996)
Carroll Denny COLEMAN, et al.
v.
CHEVRON PIPE LINE COMPANY.
CHEVRON PIPE LINE COMPANY
v.
Bertha Coleman RILEY, et al.
CHEVRON PIPE LINE COMPANY
v.
Elvina Coleman WARREN, et al.
Nos. 94-CA-1773, 95-CA-0896 and 95-CA-0897.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1996.
Rehearing Denied May 31, 1996.
*294 Mack E. Barham, Robert E. Arceneaux, Travis L. Bourgeois, Barham & Arceneaux, New Orleans, for Appellants.
M. Hampton Carver, M. Taylor Darden, Stacy Smith Brown, Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, New Orleans, for Appellee.
Lyman L. Jones, Jr., Law Office of Frank E. Beeson, III, New Orleans, for Appellants Bertha Coleman Riley & Royal Rapp.
Before KLEES, BYRNES and LANDRIEU, JJ.
LANDRIEU, Judge.
The actions we consider in these appeals arise out of a decision by a common carrier, Chevron Pipe Line Company (Chevron), to expropriate approximately thirteen acres of land located on the East Bank of the Mississippi River in Placquemines Parish below Pointe-a-la-Hache. Chevron maintains a pipe line terminal facility on this property which was subject to a fifty year lease granted in 1944.
The property in question, Tracts 212 and 213, was originally part of the land expropriated in 1924 by the Board of Commissioners of the Orleans Levee District (the Levee Board) for the construction of the Bohemia Spillway and was included in that area which was subsequently leased by the Levee Board in 1944 for the construction of oil pipelines and facilities. See Acts 1944, No. 73; La. Rev.Stat.Ann. 41:1262-1268 (West 1990). Shortly thereafter, Gulf Refining Company (Gulf) built the Ostrica Terminal on the land subject to its right of removal of all improvements at the termination of the lease.[1] In the 1950's, Chevron Oil Company obtained surface leases just upriver from the Gulf facility and began developing its own facility known as the Empire Terminal. In 1984, the Louisiana State Legislature declared that the public and necessary purpose for the expropriation had ceased and, accordingly, ordered the property (subject to all leases) returned to the former owners or their successors in title[2] (hereinafter referred to as the landowners). In 1985, prior to the actual return of the land to the landowners, Gulf was merged into Chevron and the two facilities were consolidated, operating as a single facility known as the Empire Terminal.
In anticipation of the expiration of the lease due to terminate on October 24, 1994, Chevron began negotiations with the landowners to purchase the property underlying its pipeline facility. Negotiations for purchases of Tracts 212 and 213 failed and, in early 1994, Chevron instituted expropriation *295 proceedings to guarantee the uninterrupted operation of its activities as a common carrier. See La.Rev.Stat.Ann. 19:2(8) (West 1979) & La.Rev.Stat.Ann. 45:245 (West 1982). The landowners immediately filed a petition to evict Chevron, arguing that the attempt to expropriate the land constituted a flagrant, egregious, and material breach of the lease. Chevron answered the petition and excepted for no cause of action. Noting that "a billion dollar operation does not have to hang in limbo pending the renewal or not of a lease that terminates in four or five months", the trial court found no breach of the lease and granted Chevron's exception of no cause of action. The landowners appealed this decision.
While the appeal from the eviction proceedings was pending, the expropriation trial was held and judgment was rendered in favor of Chevron. Prior to the jury trial to determine the just compensation due to the landowners, Chevron filed a Motion in Limine to exclude evidence of the value of any and all improvements placed on the property by Chevron for the purpose of determining the fair market value of the expropriated property. Over the landowners objection, Chevron's motion was granted. The jury awarded the landowners of Tract 212 a total of $40,622 as just compensation for its fair market value. The landowners of Tract 213 were awarded a total of $97,813 in compensation for the fair market value of the expropriated portion and for severance damage to the remaining unexpropriated portion. The landowners also appealed this decision, challenging the expropriation as improper and the compensation as inadequate. Given the intertwined nature of the eviction and expropriation proceedings, the appeals were consolidated by order of this Court.

EVICTION PROCEEDINGS
The right to expropriate is given to private owners and operators of pipelines for the transmission or transportation as a common carrier of petroleum, petroleum products and petroleum by-products. La.Rev. Stat.Ann. 19:2(8) (West 1979); La.Rev.Stat. Ann. 45:251 (West 1982). On appeal from the denial of their petition to evict, however, the landowners argue that where the expropriating authority is also the lessee of the property, the institution of expropriation proceedings constitutes a breach of the lease such that the lessor is entitled to immediate eviction.[3] They contend that the act of expropriation is contrary to the lessee's obligations to (1) preserve the property during the term of the lease and (2) the obligation to surrender possession at the termination of the lease. The landowners reason that instituting expropriation proceedings during the term of the lease is a flagrant violation of the rules governing lessee/lessor relations because "[n]ot only does the lessee ignore the lessor's interest entirely and thus acts for his own selfish, rather than their mutual, advantage, but the lessee tramples upon the obligation to surrender possession by attempting to change the character of its possession from that of precarious possessor to that of an owner."
The landowners's arguments are contrary to the rationale underlying expropriation. La.Rev.Stat.Ann. 9:3176 (West Supp.1995)[4] provides as follows:
The first law of society being that the general interest shall be preferred to that of individuals, every individual who possesses under the protection of the laws any particular property, is tacitly subjected to the obligation of yielding it to the community, wherever it becomes necessary for the general use.
Thus, societal needs override the individual (whether as lessee or lessor) possession of property. As such, the power to expropriate which is vested in private corporations serving a public purpose such as Chevron cannot be limited by lease nor can it *296 be contracted away. See Tennessee Gas Transmission Co. v. Violet Trapping Co., 200 So.2d 428, 433 (La. 4th Cir.), writ refused, 251 La. 65, 203 So.2d 86 (La.1967). Accordingly, we find no error in the trial court's judgment sustaining Chevron's exception of no cause of action.

EXPROPRIATION PROCEEDINGS
The landowners do not dispute that Chevron is a common carrier pipeline vested with the power to expropriate. However, appellants Rapp and Riley question whether Chevron negotiated in good faith and all the landowners question the finding that a public need was served by this taking.

Good Faith Negotiations
Negotiation is a prerequisite to filing suit for expropriation. La.Rev.Stat. 19:2; see Faustina Pipe Line v. Levert-St. John, 463 So.2d 964, 967 (La. 3rd Cir.), writ denied, 466 So.2d 1301 (citation omitted) (the requirement is met when the expropriating authority makes a good faith attempt to acquire the property by conventional agreement).
On appeal, appellants Rapp and Riley argue that Chevron failed to negotiate in good faith prior to institution of expropriation proceedings. However, Rapp and Riley failed to answer Chevron's suit within fifteen days as required by La.Rev.Stat.Ann. 19:6 (West 1979) and, accordingly, waived all defenses to the suit except claims for just compensation and damages. See La.Rev.Stat. Ann. 19:7 (West 1979). Moreover, all the landowners (including Rapp and Riley) stipulated that Chevron had contacted them directly or through a representative and made at least one offer to purchase and lease their interests in the property. Accordingly, we do not consider this issue.

Necessity of Expropriation
The landowners challenge the necessity of the expropriation, arguing that because Chevron's rights under the lease agreement were identical to those that they sought to expropriate, i.e. the right to possession of Tract 212 and 213, Chevron could prove no need prior to the expiration of the lease. They assert that "the landowner has the absolute right to force concessions from the expropriator should the expropriator `need' rights before a judgment of expropriation can be obtained." Alternatively, the landowners contend that Chevron failed to establish the requisite "necessary purpose", see 1974 La. Const. art. 1, § 4 (West Supp. 1996), for the particular part of the terminal based on Tracts 212 and 213. They contend that the facility should have been divided for purposes of expropriation, thereby rendering Chevron liable upon reversion of the property to the landowners for the removal of the rusting storage tanks and for the restoration of the property to its original condition. The landowners argue that Chevron did not establish a need for that portion of the facility which was originally constructed in the 1940's (the old Ostrica terminal) and which they claim was only expropriated as a "good business practice" to hold the land in reserve should a future public need arise.
In challenges to the necessity of a taking, the landowner must prove that the legislatively authorized expropriator exercised "its large discretion" arbitrarily, capriciously, or in bad faith. Red River Waterway Com'n v. Fredericks, 566 So.2d 79, 83 (La.1990) (citations omitted). Whether the expropriator's purpose is public and necessary is a judicial determination which we will not reverse on appeal absent manifest error. Calcasieu-Cameron Hosp. Serv. Dist. v. Fontenot, 628 So.2d 75, 78 (La. 3rd Cir.1993), writ denied, 94-0168 (La. 3/18/94) 634 So.2d 854 (citations omitted); see also 1974 La. Const. art. 1, § 4. In the context of expropriation, "necessary" refers to the necessity of the purpose for the expropriation not the necessity for a specific location. Calcasieu-Cameron Hosp. Serv. Dist., 628 So.2d at 78. Once public necessity is established, the extent and the location of property to be expropriated are within the sound discretion of the expropriation authority and determination of same will not be disturbed by the courts if made in good faith. Id. Criteria to be considered by the expropriator in determining the location and extent of the property to be expropriated includes factors such as costs, environmental impact, long range area planning, and safety considerations. Red *297 River Waterway Com'n, 566 So.2d at 83 (citing U.S. v. Carmack, 329 U.S. 230, 67 S.Ct. 252, 91 L.Ed. 209 (1946)). The amount of land and the nature of the acreage taken must be reasonably necessary for purpose of the expropriation, but it is not necessary "to show actual, immediate, and impending necessity for the expropriation." City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675, 677 (La.1930) (emphasis added). The suitability of the property for expropriation is primarily a question of fact on which the judgment of the trial court will not be disturbed unless manifestly erroneous. Board of Com'rs of New Orleans Exhibition Hall v. Missouri Pacific R. Co., 625 So.2d 1070, 1073 (La. 4th Cir.1993), writ denied, 93-088, 93-3100 (La. 1/28/94) 630 So.2d 802, cert. denied, New Orleans 2000 Partnership v. Board of Com'rs of New Orleans Exhibition Hall Authority, ___ U.S. ___, 114 S.Ct. 2707, 129 L.Ed.2d 835 (1994) (citation omitted). By statute, expropriation of property for common carrier pipe line purposes should include "the real estate, rights of way pipe in line, telephone and telegraph lines or other communication systems, tank facilities ... necessary for the proper conduct of its business as a common carrier, all fixtures, equipment and personal property of every kind owned, controlled, operated, used or managed, in connection with, or to facilitate the transportation, distribution and delivery of petroleum through lines constructed of pipe." La.Rev.Stat. 45:251(3) (West 1982) (emphasis added). The property expropriated in this case consists of approximately 6.7 acres out of Tract 212 and approximately 6.8 acres out of Tract 213 which are near the middle of the existing integrated Ostrica-Empire facility. Eighteen pipe lines connect the older Ostrica portion and newer Empire portion of the facility; five are constantly in use and eight are temporarily inactive but readily available when needed. Three pipelines extend to the northeast across Tracts 212 and 213. The upper and lower portions of the old Ostrica Terminal are connected by a road system which crosses Tracts 212 and 213, running along the bank of the river and along the back of the facility. An integrated and fully operational ten inch fire water system crosses the two tracts, as do berms (small levees or dikes) which serve as spill prevention control and containment levees for the facility. In addition, a heliport for emergency evacuation is located on Tract 212, while spare parts warehouse, potable water tanks and an office building are located on Tract 213.
Accordingly, we do not find that the trial court was manifestly erroneous in allowing Chevron to expropriate the facility as a whole. Moreover, given the fact that Chevron came into possession of Tracts 212 and 213 a year after the property was returned to the landowners and, in business terms, shortly before the expiration of the lease, we do not find Chevron's failure to upgrade and renovate the existing tanks on Tracts 212 and 213 prior to the determination of its longterm possession indicative of a lack of future public need for that portion of the property.

Just Compensation
The landowners claim that the trial court erred in excluding evidence of the value of the land as an oil facility, as well as any evidence of the landowner's reversionary rights. In every expropriation, the owner must be compensated to the full extent of his loss." La. Const. 1974, Art. 1, § 4. Generally this means, that the owner should be "put in as good a position pecuniarily as he would have been had his property not been taken." State Dept. of Highways v. Bitterwolf, 415 So.2d 196, 199 (La.1982) (citation and internal quotations omitted). La.Civ.Code Ann. art. 2633 (West 1952) provides:
In estimating the value of the property to be expropriated, the basis of assessment shall be true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom and without deduction therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.
Thus, the owner is to be paid the true value of his land as of the moment that it is legally demanded for a proposed public improvement without including in such value the increment which may have resulted from the fact that the improvement has been proposed *298 and on the other hand without deducting therefrom the increment which may have resulted from the fact that the improvement has been in contemplation or from any other cause, save that the improvement has been proposed. Bitterwolf, 415 So.2d at 199 (citation omitted).
In this case, the public improvements were in place prior to the expropriation proceedings. The landowners argue they should therefore derive the value of these improvements. We disagree.
By terms of the lease, Chevron had "the right to remove all property of whatever kind placed on said land by lessee." La.Civ.Code Ann. art. 493 (West Supp.1996) provides in pertinent part:
Buildings, other constructions permanently attached to the ground, and plantings made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent.
When the owner of buildings, other constructions permanently attached to the ground, or plantings no longer has the right to keep them on the land of another, he may remove them subject to his obligation to restore the property to its former condition. If he does not remove them within 90 days after written demand, the owner of the land acquires ownership of the improvements and owes nothing to their former owner.
At the time of the expropriation, the landowners had no ownership interest in the improvements. Thus, compensation based on the property in its unimproved state placed the landowners in "as good a position pecuniarily" as they were before the expropriation. Moreover, in cases where the expropriating authority improved the property prior to the actual expropriation of the property, Louisiana courts have consistently held that the property should be valued without regard to the company's improvements. See Ouachita Parish School Board v. Clark, 197 La. 131, 1 So.2d 54 (La.1941) (where a parish school board appropriated defendant's land by constructing a school on it and thereafter sued to expropriate it, school board owed the landowner the value of the soil only); New Orleans Ry. & Light Co. v. Lavergne, 138 La. 949, 70 So. 921 (La.1916) (where a railway company has appropriated and improved low vacant land and thereafter sues to expropriate it, the value of the land is to be taken as of the date of commencement of suit, without regard to the company's improvements). The trial court did not err in its determination that the property should be valued in its unimproved condition.

Expert testimony
The landowners argue that the trial court erred in denying their motion in limine to exclude expert testimony which was contrary to Chevron's admission in discovery that the highest and best use of the property was as an oil terminal. The underlying tenet of their argument is that they are entitled to the value of the property as an oil terminal which their experts, Dr. Wade Ragas and Hank Tatje, value at $2,251,000 and $1,000,000, respectively. We disagree.
In expropriation proceedings the value of land is fixed with reference to the loss sustained by the owner, not as enhanced by the purpose for which it was taken. U.S. v. Chandler-Dunbar Water Power Co. 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063 (1913) (that the property may have to the public a greater value than its fair market value affords no just criterion for estimating what the owner should receive); State Through Dept. of Highways v. Hayward, 243 La. 1036, 150 So.2d 6, 8 (La.1963); Yazoo & M.V.R. Co. v. Teissier, 134 La. 958, 64 So. 866, 867 (1914).
During the discovery process, Chevron answered an interrogatory requesting the basis of its position as to the market value of the property, as well as the value and highest and best use assigned by Chevron to Tracts 212 and 213 as follows:
Research was conducted on the east bank of Plaquemines Parish for leases and/or transfers of properties with geographic, physical, topographic and access features similar to the subject property. The subject property is not accessible by land. As such, comparable property that was similarly restricted was considered the best evidence of achievable market value. *299 The valuation of the site was without regard to the improvements, including physical structures and improvements to the land, i.e., site work.
Based on the existing lease of the surface rights between Chevron and the Board of Commissioners of the Orleans Levee Board, the highest and best use was concluded to be that use permitted by the terms of the lease, i.e. to erect and use on the tract tanks and facilities for the receipt, storage transportation and shipment of oil, goods, wares and merchandise.
Based on the analysis of comparable surface lease transactions and completed sales, the market value of the land sought to be expropriated in Tracts 212 and 213 in their unimproved state is $325.00 per acres for the front acreage and $150.00 for the back acreage.
In conjunction with this answer to the interrogatory, Chevron admitted to a Request For Admission that "the highest and best use of the land is ... to erect on the tract, tanks and facilities for the receipt, storage, transportation, and shipment of oil, goods, wares, and merchandise."
Based on these responses from Chevron, the landowners sought to exclude the testimony of Chevron's experts as to the value of the property, arguing that it would be inconsistent with Chevron's responses to discovery. Chevron subsequently withdrew its prior response and filed an amended response stating that Chevron considered the highest and best use of the property to be speculative investment. The trial court denied the landowners Motion in Limine, noting that Chevron's original admission pertained to the highest and best use of the property to Chevron, which was a matter of no consequence since Chevron was the expropriator.
Under the circumstances of this case, we find no abuse of the trial court's "broad discretion" in allowing the testimony of the Chevron's expert witnesses. See La.Code Evid.Ann. art. 702, comment (d); see also Morrison v. J.A. Jones Const. Co., Inc., 537 So.2d 360, 363 (La. 4th Cir.1988).

Attorney's Fees
Appellants, represented by the firm of Barham & Arceneaux, stipulated to attorney's fees of $50,000 for the work performed by their counsel through the trial court.[5] Appellants Rapp and Riley represented by Frank E. Beeson, III, and Lyman L. Jones, Jr. petitioned the trial court to be awarded a total of $10,875 in attorney's fees. After a hearing on the matter, the trial judge awarded them $5,760.
On appeal, appellants Rapp and Riley argue that counsel expended a total of 94.2 hours on the case and that the trial court's award amounting to $61.15 per hour is "punitive to counsel in light of the current rates of compensation for attorney's [sic] in the City of New Orleans" and, thus, is a "violation of the right of the appellants represented in this appeal to be heard before the Court by the counsel of their choice."
Absent an abuse of discretion, this Court will not "second guess" a trial court's award of attorneys fees. Penton v. Siemens Energy Automation, Inc., 94-0286 (La. 4th Cir. 11/30/94) 646 So.2d 496, 501-02. Counsel for Rapp and Riley filed no trial briefs, argued no motions, participated in little pre-trial discovery, and offered no evidence whatsoever during the taking and/or compensation phase of the trial. Accordingly, we do not find that the trial court abused its discretion in its determination of attorneys fees.
For the foregoing reasons, the judgments of the trial court are affirmed.
AFFIRMED.
NOTES
[1] The lease taken by Gulf in accordance with Act 73 of 1944 pertained to 54.1 acres. The original annual rent was $750; at the end of the lease period the annual rent was $1000.
[2] The owners of Tract 212 and plaintiffs and defendants, respectively, in the eviction proceedings, Carroll Denny Coleman, et al v. Chevron Pipe Line Company, 94-CA-1773 (25th J.D.C. No. 38-317) and the expropriation proceedings, Chevron Pipe Line Company v. Bertha Coleman Riley, 95-CA-896 (25th J.D.C. No. 38-198) are Carroll Denny Coleman, Catherine Johnson, Ethel Coleman Jones, Gloria Bennett, Hortense Smithson, James Steven Coleman, Lola Albert Moore, Loren Coleman Jones, Marion Howard, Melinda Terry Coleman, Melody Coleman, Merline Payton, Robert C. Coleman, Jr., Royal Coleman, Sr., Stephanie Richard, Wendell Coleman, Sr., Leon Johnson, Henry Johnson, Helen Hall Galloway, and Succession of Odeal Dandrige. In the consolidated expropriation case, Chevron Pipe Line Company v. Elvina Coleman Warren, et al, 95-CA-897 (25th J.D.C. No. 38-199), the owners of Tract 213 and named defendants are Elvina Coleman Warren and Royal Rapp.
[3] Similarly, in their appeal from the expropriation judgment, the landowners allege that Chevron abused its right of expropriation by instituting proceedings seven months prior to termination of the lease in order to continue in uninterrupted possession "so that it would not have to face the possibility of any legitimate negotiation with the Landowners."
[4] Former La.Civ.Code art. 2626 was redesignated as La.Rev.Stat. 9:3176 pursuant to Acts 1993, No. 841, § 2, eff. Jan. 1, 1995.
[5] According to their brief, this stipulation was made "provided the district court's judgment was affirmed on appeal."