DENNIS, Circuit Judge:
Illinois Central Railroad Co. seeks to expropriate a strip of private property for the purpose of building a rail spur to a chemical storage facility on the Mississippi River. Under Louisiana law, a railroad company may expropriate private property only if it establishes a “public and necessary purpose” for the expropriation. The district court granted Illinois Central’s motion for partial summary judgment on that issue, finding that the railroad established a public and necessary purpose as a matter of law. Because we find a genuine factual dispute over whether the expropriation serves a necessary purpose, we reverse and remand for further proceedings.

I. Facts and Procedural History

Illinois Central is a common carrier railroad that operates a main line through Iberville Parish, Louisiana. In connection with its business, Illinois Central seeks to construct a rail spur from its main line to a chemical storage facility that is owned and operated by a French corporation named LBC PetroUnited, Inc. (“PetroUnited”).
The PetroUnited facility is situated on the banks of the Mississippi River in St. Gabriel, Louisiana, approximately one mile west of the Illinois Central main line. The facility serves dozens of chemical producers who store their chemicals at the facility until they can make arrangements to ship them elsewhere. The facility is currently accessible by barge and by truck. Illinois Central claims that making the facility rail-accessible would be advantageous for companies storing chemicals at the facility. The railroad also contends that shipping chemicals via rail is safer and more efficient than transporting them by truck or barge.
For the proposed spur to reach the Pe-troUnited facility, however, it must cross *362 land belonging to the appellants, James and Barbara Mayeux. Despite the railroad’s offers to purchase a servitude over the Mayeuxs’ land, the Mayeuxs have been unwilling to sell.
After the Mayeuxs rejected its offers to purchase a servitude over the land, Illinois Central filed a complaint for expropriation in the Middle -District of Louisiana. Illinois Central argued that, as a railroad corporation operating in Louisiana, it was entitled to expropriate a servitude over the Mayeuxs’ land because the proposed spur would serve a public and necessary purpose under Louisiana law. On February 8, 2000, Illinois Central filed a motion for partial summary judgment on that issue. After hearing arguments from both sides, the district court granted the railroad’s motion. On June 6, 2001, the case proceeded to a bench trial in which the district court awarded $180,429.00 to the Mayeuxs as “just compensation” for the taking. The Mayeuxs now appeal from the district court’s judgment arguing that there was no right to expropriate because the proposed spur serves neither a public nor a necessary purpose.

II. Discussion

A. Standard of Review

[1]

We review grants of summary judgment de novo.[2] Summary judgment is proper if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”[3] An issue is material if its resolution could affect the outcome of the case.[4] In deciding whether a fact issue has been created, we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party.[5] Since this diversity case involves solely questions of Louisiana expropriation law, we must apply the state law in an attempt to rule as the Louisiana Supreme Court would if presented with the same issues.[6]

B. Public and Necessary Purpose

Under Louisiana Revised Statute § 19:2(2), “[a]ny domestic or foreign corporation created for the construction of railroads” may expropriate “needed” private property when the owner of the property and the corporation cannot agree upon a *363 purchase price.[7] A second provision, Louisiana Revised Statute § 45:353, allows foreign railroad companies operating in Louisiana to expropriate property needed to construct railroads and rail spurs and for other “railroad purposes.”[8] Both of these statutes are, however, subject to the state constitutional protections afforded to owners of private property. Article I, Section 4 of the Louisiana Constitution specifically provides that “[p]roperty shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation to the owner.”[9] The Louisiana Constitution also makes clear that, in a given expropriation case, whether “the purpose is public and necessary is a judicial question.”[10]
1. Public Purpose
Whether a particular expropriation will serve a public purpose is a two-pronged inquiry.[11] Under the first prong, the expropriating corporation must show that there is a public right to use the expropriated property (i.e., the right of way for the rail spur).[12] This prong consists of two subparts.[13] Not only must the public have the right to use the spur, but there must also exist a possibility that more than one particular user will have access to the spur.[14] Under the second prong, the court considers whether the expropriation will contribute to the general welfare of the community.[15]
There is no question that the public will have the right to use the spur in this case. The fact that PetroUnited will initially “own” the spur[16] is inapposite; Louisiana courts have held that the financing and ownership arrangement for a proposed spur has no effect on whether the spur will serve a public purpose.[17] Because Illinois Central proposes to connect the spur to its main line, the spur is subject to regulation by the Louisiana Public Service Commission, and Illinois Central must use it to serve the public without *364 discrimination.[18] Thus, the first subpart is satisfied.
The second subpart concerns whether the spur will actually be available to multiple shippers. The Louisiana Supreme Court has made clear that in the context of railroad expropriation, the number of potential shippers is a key factor in establishing public purpose. In River & Rail Terminals, Inc. v. Louisiana Railway & Navigation Co., the Court held that a rail spur built to serve only one shipper was not built for a public purpose.[19] The railroad company in River & Rail had built a rail spur exclusively to serve the New Orleans Refining Company in the shipment of its own products.[20] Because the spur benefitted no shipper other than the one refining company, the court held that it did not serve a “public purpose.”[21] The holding focused on the fact that the spur exclusively served one private shipper:
The evidence clearly shows that the spur track of defendant company serves no other enterprise but the New Orleans Refining Company, and that it was constructed solely for the purpose of enabling defendant company to handle tank cars shipped out by the refinery.
There is nothing in the record to show that the public has ever used the spur track of défendant company, or that defendant company’s spur track will accommodate a number of plants on the river front, and will be open to all other business enterprises, present and future, in the same vicinity.[22]
Although one shipper is not enough, the proposed rail spur does not have to serve a large number of shippers to serve a public purpose. In Kansas City, S. & G. Railway Co. v. Louisiana Western Railroad Co., public purpose was established by showing that a spur would reach nine private industrial plants.[23] In Gumbel v. New Orleans Terminal Co., a railroad company established a public purpose by showing that the rail spur would be open to the public and that it could potentially serve three private companies already operating in the area along the spur.[24] In Calcasieu & Southern Railway Co. v. Bel, the court held that public purpose was satisfied when a gravel company built a spur primarily to ship gravel from its own gravel pit.[25] The court found a public purpose because some of the land along the seven-mile rail spur belonged to lumber companies that might use the spur to ship lum *365 ber.[26]
The general public utility of a proposed rail spur also figures into the public purpose analysis. The Bel decision demonstrates that after River & Rail, the Louisiana Supreme Court adopted a broader view of public purpose that encompasses the general public utility of a proposed expropriation. In determining that the gravel company’s rail spur served a public purpose, the Bel court considered the economic benefits that the spur would bestow upon the general public:
It was shown that ... the construction of the road will be a public advantage and will tend to enlarge the resources, increase the industrial energies, and promote the productive powers of a considerable number of the inhabitants or businesses of a section of the state, and manifestly will contribute to the general welfare and prosperity of the community in which it is located.[27]
The court then referred with approval to a section of Nichols on Eminent Domain discussing the nationwide trend of interpreting public purpose broadly to mean public utility.[28] In the next paragraph, the court cited River & Rail, but stated that it is “not pertinent to, or determinative of, the issue in the instant case.”[29] Having determined that the gravel company’s rail spur was available to other shippers and that it would generally benefit the public, the court simply dismissed River & Rail as irrelevant to its analysis.[30]
*366 Although PetroUnited is presently the only company with property adjacent to the proposed spur line, multiple shippers will have access to the spur. Consequently, this case is distinguishable from River & Rail. PetroUnited is in the chemical storage and distribution business; it does not merely manufacture and ship its own products. Rather, various companies deliver their products to the facility for storage until they make arrangements to ship them elsewhere. The arrangement is one of bailment; at all times, PetroUnited’s customers retain ownership of the products stored at the facility. Thus, PetroUn-ited’s customers decide when, where, and how to ship their products from the facility.
The summary judgment evidence indicates that from 1995 to 1999, PetroUnit-ed’s Sunshine facility stored chemicals for thirty-three different companies. The evidence also shows that, on several" occasions, various chemical companies asked Illinois Central to build a spur to the Pe-troUnited facility so that they could ship their chemicals via rail from that location. Thus, unlike the spur in River & Rail, there is uncontroverted evidence that the rail spur in this case could serve numerous shipping companies and benefit the general public. Since PetroUnited produces nothing, the only way that its facility generates a profit is by storing and facilitating the distribution and shipment of other companies’ products.[31]
Contrary to the dissent, our public purpose analysis does not conflict with the holding in River & Rail. We do not hold that a public purpose is established merely because the public will have a theoretical right to use the spur; the expropriator must also show that a sufficient number of shippers will have actual access to the spur. There was no public purpose in River & Rail because at the time of the lawsuit, only one shipper had access or occasion to use the spur.[32] In the present case, dozens of shippers will have access to the spur.
Furthermore, there is no basis for the dissent’s claim that the general public must have access to the terminal served by the rail spur. Neither Kansas City, Gumbel, nor Bel involved public terminals. In each of these cases, public purpose was established by showing that the spur was open to the public and that several companies would actually have occasion to use it.[33] There is no indication in any of these *367 cases that the public would have a right to use the private terminals that abutted the proposed spurs. Nor is there any indication that River & Rail requires that the rail terminal be open to the public.[34] The holding of River & Rail is simple: a spur built to serve one private shipper does not serve a public purpose. Neither it, nor the cases that it relied upon, require the spur to serve a public terminal.[35]
In Gumbel, for instance, public purpose was established because there were three private companies operating along the track that could use it for shipping products.[36] It would be nonsensical to conclude that a public purpose exists when a spur serves three private companies operating from three private terminals, but that a public purpose does not exist when a spur serves dozens of companies shipping products from one terminal.
Thus, the public purpose requirement is satisfied in this case. The undisputed evidence shows that the spur will be open to the public and that the dozens of companies who use the St. Gabriel facility will have access to the spur as a means of shipping their products through the region. Summary judgment was therefore proper on the issue of public purpose.
2. Necessary Purpose
There are at least two components to the necessary purpose inquiry under Louisiana law. First, the private expropriator must show that there is a public necessity for the expropriation; i.e., that there is a public demand for the expropriation.[37] Second, the expropriator must *368 show that the expropriation is expedient; i.e., “[t]he amount of land and the nature of the acreage taken must be reasonably necessary for the purpose of the expropriation....” [38]
The district court erred in its necessary purpose analysis because it focused only on the expediency aspect of the inquiry. The court stated that the necessary purpose requirement is satisfied if the taking is for “railroad purposes,”[39] and emphasized that the expropriator need not “show actual, immediate, and impending necessity for the expropriation.”[40] Since the Mayeuxs did not allege that Illinois Central was attempting to expropriate more property than was needed for the proposed spur, the court found that summary judgment was proper.
Before reaching the expediency issue, however, the court should have considered whether there was a public necessity for the spur. A key aspect of the public necessity inquiry under Louisiana expropriation law is whether there is an actual public demand for the expropriation.[41] The court should have examined this issue and found a genuine issue of fact regarding the public demand for the proposed spur. Illinois Central presented evidence of public demand for the spur by showing that certain chemical companies had directly petitioned the railroad to build a spur to this location. The Mayeuxs, however, presented expert testimony from a transportation and logistics specialist stating that there is no public demand for the proposed spur because it will be unattractive to companies in the business of shipping bulk chemicals. The Mayeuxs’ expert opined that the proposed spur will rarely, if ever, be used to ship chemicals from the Mississippi Valley. Despite its relevance to the public demand or public necessity inquiry, the district court’s summary judgment opinion makes no mention of this expert testimony.
Because the Mayeuxs have shown that there is a genuine dispute as to whether there is a public demand or public necessity for the spur, summary judgment on this material issue of fact was unwarranted. On remand, the district court must determine whether there is a sufficient public demand for the proposed spur to satisfy the necessary purpose requirement under Louisiana law.

III. Conclusion

Because there is a genuine factual dispute over whether there is a public neces *369 sity for the proposed spur, and summary judgment on the necessary purpose issue was improper, we therefore reverse the district court’s judgment and remand the case for trial or other proceedings.
REVERSED and REMANDED for further proceedings.

. The district court applied a more lenient standard of review on the ground that the case was set for a bench trial. Although prior panels of this court have entertained the idea of applying a more lenient standard in nonju-ry trials, this circuit has not actually adopted such a standard. See, e.g., United States Fid. & Guar. Co. v. Planters Bank & Trust Co., 77 F.3d 863, 866 (5th Cir.1996); Phillips Oil Co. v. OKC Corp., 812 F.2d 265, 273 n. 15 (5th Cir.1986). Under the suggested more lenient standard, the district judge could grant summary judgment based on inferences drawn from incontrovertibly proven facts, so long as there is no issue of witness credibility. United States Fid. & Guar., 77 F.3d at 866. Because we determine that the Mayeuxs have controverted a material issue of fact, we need not consider whether the more lenient standard is appropriate in this context.

. Mongrue v. Monsanto Co., 249 F.3d 422 (5th Cir.2001).

. Fed.R.Civ.P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

. Hotard v. State Farm Fire & Cas. Co., 286 F.3d 814, 817 (5th Cir.2002).

. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Musser Davis Land Co. v. Union Pac. Res., 201 F.3d 561, 563 (5th Cir.2000).

. La.Rev.Stat. Ann. § 19:2(2) (West 1979 & Supp.2002).

. La.Rev.Stat. Ann. § 45:353 (West 1982).

. La. Const. art. I, § 4 (West 1996) (emphasis added).

. Id.; accord Calcasieu & S. Ry. Co. v. Bel, 224 La. 269, 69 So.2d 40, 41 (1953).

. Melvin G. Dakin & Michael R. Klein, Eminent Domain in Louisiana 360 (1970).

. Id. (citing Bel, 69 So.2d at 42; Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518, 521 (1937); Kansas City, S. & G. Ry. v. Louisiana W.R. Co., 116 La. 178, 40 So. 627, 629 (1905)).

. Id.

. Id. at 361.

. Id. (citing Texas E. Transmission Corp. v. Bowman, 238 La. 399, 115 So.2d 797, 798-99 (1959); Bel, 69 So.2d at 43).

. At the time of summary judgment, Pe-troUnited and Illinois Central had come to a tentative financing agreement whereby Pe-troUnited would front the construction costs and maintain title over the spur for twenty years or until Illinois Central fully reimbursed PetroUnited, whichever came first.

. See, e.g., Bel, 69 So.2d at 43 (the fact that the expropriating railroad’s parent company, which was not a railroad company, was financing the construction of the proposed spur had no effect on the public purpose of the spur); see also S. Natural Gas Co. v. Poland, 384 So.2d 528, 530 (La.Ct.App.2d Cir.1980) (”[W]e see no reason to prohibit expropriation of property because the eventual facility which will serve the public will not be solely owned by the expropriator. Where the law itself does not impose such a restriction on the power, we shall not impose the restriction.”).

. La.Rev.Stat. Ann. § 45:1165 (West 1999); see also Dakin & Klein, supra note 11, at 361 ("[A]ll corporations endowed with the power of expropriation are public service corporations regulated by the Louisiana Public Service Commission and obligated by law to serve the public without discrimination.'').

. 171 La. 223, 130 So. 337, 340 (1930).

. Id. at 339-40.

. Id. at 340.

. Id.

. 116 La. 178, 40 So. 627, 629 (1905).

. 186 La. 882, 173 So. 518, 521 (1937) ("It is clear that the spur tracks involved here serve a public and not a mere private purpose. The uncontradicted testimony in the record shows that the tracks are not restricted to the use of any single industrial plant, but, on the contrary, are available to any industrial plant which may locate on any of the now vacant sites in the area; that there are presently operating in the area three industrial plants which are served by the tracks, which, in the past, also served a number of other plants formerly located in this industrial area.”), overruled in part by, Lake, Inc. v. La. Power & Light Co., 330 So.2d 914, 918 (La.1976).

. 224 La. 269, 69 So.2d 40, 41 (1953).

. Id. at 42-43.

. Id. at 43; accord City of New Orleans v. New Orleans Land Co., 173 La. 71, 136 So. 91, 92-93 (1931) (citing Corpus Juris for the following: "The character of the use, and not its extent, determines the question of public use. It is not essential that the use or benefit extend to the whole public or any considerable portion thereof, nor that each and every individual member of the community have the same degree of interest therein.”).

. Bel, 69 So.2d at 43. Although the court did not indicate which edition of Nichols it was citing, the current edition of that treatise contains statements to the same effect. See 2A Julius L. Sackman, Nichols on Eminent Domain, § 7.02[5] (rev.3d ed. 2001) (“Many courts have recognized the inadequacy of the narrow 'use by the general public' rule and have opted to follow the liberal construction of 'public use.'"); see also City of Shreveport v. Chanse Gas Corp., 794 So.2d 962, 972-74 (La.Ct.App.2d Cir.2001) (acknowledging and adopting the federal trend in "public purpose” jurisprudence).

. Bel, 69 So.2d at 43.

. Id. The more recent Louisiana appellate court cases define "public purpose” solely in terms of public benefit. See, e.g., Town of Vidalia v. Unopened Succession of Ruffin, 663 So.2d 315, 319 (La.Ct.App.3d Cir.1995) ("[A]ny allocation to a use resulting in advantages to the public at large will suffice to constitute a public purpose.”); Dixie Pipeline Co. v. Barry, 227 So.2d 1, 7 (La.Ct.App.3d Cir.1969) (finding a public purpose where a proposed pipeline would connect a privately owned plant with the proposed expropriator’s pipeline because "the effect of the pipeline will be to transport large quantities of propane gas from the plant to a large market in several states”), writ ref'd, 255 La. 145, 229 So.2d 731 (1970) ("On the facts found by the Court of Appeal the result is correct.”); Texas Pipe Line Co. v. Stein, 190 So.2d 244, 252 (La.Ct.App. 4th Cir.1966), rev’d on other grounds as moot, 250 La. 1104, 202 So.2d 266 (1967) ("The public purpose is no less served because the pipeline initially will deliver to only one consumer. If this were reason to reject its qualification as a public utility carrier, it would be very difficult, if not impossible, for any new common carrier pipeline for delivery of crude oil to a refinery to qualify, for we may fairly assume they are initially connected to only one refinery. It is not the number of persons who initially contract for use of the line, nor the number who might actually use it at any given time, which determines its public character, but rather the extent of the right to its use by the public.”); see also Town of Vidalia, 663 So.2d at 319 ("Despite this restrictive language [in River & Rail], the Louisiana jurisprudence has not defined 'public purpose' so narrowly.”). We *366 do not speculate, however, on whether the Louisiana Supreme Court would follow River & Rail today.

.It is also relevant to note that River & Rail was a trespass suit, not a traditional expropriation suit. The plaintiff in River & Rail sought to enjoin the defendant railroad company from operating a rail spur on the plaintiff's land without the plaintiff's permission or a court order. River & Rail, 130 So. at 337-38. That is, the railroad tortiously, and perhaps criminally, trespassed on the plaintiff's property to build and operate a rail line. The railroad company raised expropriation as a defense to the trespass suit after it had already been operating the rail spur for some time. Id. Although this fact does not overtly figure into the court’s public purpose analysis, it provides relevant background from which to evaluate the case. Had the court simply required the railroad to compensate the landowners for the land that it had tor-tiously occupied, there would be no incentive for it (or others similarly situated) to negotiate with landowners or to bring expropriation suits before forcefully seizing land. Not only would that conclusion be inequitable under the facts of River & Rail, but it would undermine eminent domain law and breed bad public policy.

. Id. at 340.

. Kansas City, S. & G. Ry. Co. v. La. W. R.R. Co., 116 La. 178, 40 So. 627, 629 (1905) (holding that a public purpose was established where "the proposed spur track of *367 plaintiff company will reach nine industrial plants ... and will be open to public use”) (emphasis added); Gumbel v. New Orleans Terminal Co., 186 La. 882, 173 So. 518, 521 (1937) ("It is clear that the spur tracks involved here serve a public and not a mere private purpose. The uncontradicted testimony in the record shows that the trades are not restricted to the use of any single industrial plant, but, on the contrary, are available to any industrial plant which may locate on any of the now vacant sites in the area; that there are presently operating in the area three industrial plants which are served by the tracks ....”) (emphasis added); Bel, 69 So.2d at 42-43.

. See River & Rail, 130 So. at 340 (stating that "[t]here is nothing in the record to show that the public has ever used the spur track of defendant company, or that defendant company’s spur track will accommodate a number of plants on the river front”) (emphasis added).

. The court summarized its holding in River & Rail as follows: "Our conclusion is that the construction by the defendant company of the spur track from its main line was for the purpose of serving an individual enterprise only and not for a public purpose.” Id. The cases that River & Rail relied on for its statement that "there must be a general public right to a definite use of the property, as distinguished from a use by a private individual or corporation” merely state that a spur built to serve one private shipper does not serve a public purpose. See Kansas City, 40 So. at 629 (acknowledging that there is no public purpose where the proposed spur would serve “a private station for an individual shipper”); Atlanta, S.M. & L.R. Co. v. Bradley, 141 Ga. 740, 81 S.E. 1104, 1105 (1914) (holding that a spur serving only one shipper did not satisfy a public purpose); Pittsburg, W. & K.R. Co. v. Benwood Iron-Works, 31 W.Va. 710, 8 S.E. 453, 455, 467 (1888) (holding that a public purpose was not established where the proposed spur would serve one steel factory). None of these cases hold that a proposed spur must serve a public terminal for it to serve a public purpose.

. Gumbel, 173 So. at 521.

. City of Westwego v. Marrero Land & Improvment Ass’n, 221 La. 564, 59 So.2d 885, 886 (1952); Claiborne Elec. Coop., Inc. v. Garrett, 357 So.2d 1251, 1255 (La.Ct.App.2d Cir.1978); S.W. Elec. Power Co. v. Conger, 254 So.2d 98, 99 (La.Ct.App.2d Cir.1971); Dixie Pipeline Co. v. Barry, 227 So.2d 1, 7 (La.Ct.App.3d Cir.1969); see also Dakin & Klein, supra note 11, at 363.
Academically, the public demand inquiry might fall under the heading of "public pur *368 pose” rather than "necessary purpose,” but in deference to the weight of Louisiana decisions, which discuss the issue in terms of "necessity” and "public necessity,” we have characterized it as an issue of necessary purpose.

. Coleman v. Chevron Pipe Line Co., 673 So.2d 291, 296 (La.Ct.App. 4th Cir.1996) (quoting City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675, 677 (1930)); accord Calcasieu-Cameron Hosp. Serv. List. v. Fontenot, 628 So.2d 75, 78 (La.Ct.App.3d Cir.1993); see also Dakin & Klein, supra note 11, at 363 (characterizing the quantity and the location of the taking as "expediency issues”).

. Mo. Pac. R.R. Co. v. Nicholson, 460 So.2d 615, 620-21 (La.Ct.App. 1st Cir.1984).

. Coleman, 673 So.2d at 297 (quoting Moeglich, 126 So. at 677); accord Fontenot, 628 So.2d at 78.

. City of Westwego, 59 So.2d at 886 (considering evidence of the public demand for the expropriation before reviewing propriety of the proposed location); Claiborne Elec. Coop., 357 So.2d at 1255 (evaluating the demand for the expropriation as part of the necessary purpose inquiry); Conger, 254 So.2d at 99 (evaluating the public necessity (i.e., public demand) before discussing expediency issues); Dixie Pipeline, 227 So.2d at 7; see also Dakin & Klein, supra note 11, at 363-65 (explaining that an expropriation must be necessary for a public benefit).